IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, THE STATE OF MARYLAND, MICHAEL GOEBEL, Ex Rel., and WILLIAM COLEMAN, Ex Rel. | : : : : : | CIVIL ACTION |
| v. | : : | |
| SELECT REHABILITATION INC., ANCHORAGE SNF, LLC, d/b/a Anchorage Healthcare Center, COMMUNICARE HEALTH SERVICES, INC. and WHITE OAK HEALTHCARE, LLC d/b/a White Oak Senior Care | : : : : : : : | NO. 19-3277 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                        **February 13, 2024**

Defendants Anchorage SNF, LLC, CommuniCare Health Services, Inc., and White Oak Healthcare, LLC, move for interlocutory review under 28 U.S.C. § 1292(b) of the denial of their motion to dismiss this second *qui tam* action under the first-to-file rule. They argue that the decision turns on a controlling issue of law that has not been addressed by the Third Circuit Court of Appeals and has created substantial grounds for a difference of opinion among the circuits.

Our holding that this second *qui tam* action adding new defendants is not barred by the first-to-file rule was not alone case dispositive. Nor was the basis for our decision that the two actions allege separate conspiracies a novel factual or legal holding. Therefore, we shall deny the motion to certify the order for interlocutory review.

### Background

Relators Michael Goebel and William Coleman ("Relators") brought this action under the False Claims Act ("FCA"), alleging that the defendants, operators of skilled

nursing facilities ("SNFs"), conspired with Select Rehabilitation, Inc. ("Select"), a contract provider of rehabilitation services, to bill Medicare and Medicaid for therapies that patients did not need or were not provided.  As alleged, the defendants submitted bills based on false treatment records.[1]

Defendants moved to dismiss under the first-to-file rule which bars any "person other than the Government" from intervening or bringing "a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).[2]  Defendants claimed that this second action is barred because it alleged the same scheme as the first action filed in this court.[3]  They argued that although this action involves different defendants, it is "related" to the first-filed action and is barred under the first-to-file rule.[4]

We addressed the question of whether a second-filed action describing a similar scheme as the first action and naming different defendants is barred under the first-to-file rule.[5]  In the absence of Third Circuit precedent, we considered the holdings and rationales of the circuits that had ruled on the issue.  We adopted the reasoning of the Fifth and Tenth Circuits.[6]  Those circuits held that the first-to-file rule does not necessarily bar a later-filed action that adds unrelated defendants.  Applying that reasoning, we held that "a second action is not barred when it asserts a new claim based upon similar but

---

[1] The details of the scheme and the roles of the defendants are described in our September 29, 2023 Memorandum Opinion.  *See* Mem. Op., Sept. 29, 2023 6–9, ECF No. 109 ["Mem. Op."].

[2] Defs.' Mem. in Supp. of Mot. to Dismiss 9–12, ECF No. 93-2.

[3] *Id.* at 12–16.  *See United States ex rel. Carson v. Select Rehabilitation, Inc.*, No. 2:15-cv-05708 (E.D. Pa. filed Oct. 20, 2015)

[4] *Id.* at 16–18.

[5] Mem. Op. 12.

[6] *Id.* at 18.

different schemes and a separate injury caused by different defendants."[7]  After comparing the complaints in this action and the first-filed action, we concluded the complaints identified separate fraudulent schemes orchestrated by a common defendant involving different players at different SNFs.[8]

We then considered whether the scheme alleged in the first action gave the government enough information to discover the identities of the defendants named in the second action.[9]  We determined that it did not, finding that the first action did not allege that Select was carrying out a company-wide fraudulent scheme on a national basis with SNFs who were not named in the first action.[10]  Because the two actions identified separate fraudulent schemes involving unrelated defendants, we concluded that the first-to-file bar did not bar this action.[11]

Defendants move to certify for interlocutory review the issue of "[w]hether and in what circumstances the adding of new defendants in a later-filed *qui tam* action, where they were not named as defendants in the pending first-filed action, takes the case out the reach of the first-to-file bar of the False Claims Act, 31 U.S.C. § 3730(b)(5)."[12]

**Analysis**

Under the final judgment rule, only final judgments are appealable unless the issue falls under one of the "limited exceptions."  See *Bachowski v. Usery*, 545 F.2d 363, 367–

---

[7] *Id.*

[8] *Id.* at 18–20.

[9] *Id.* at 20.

[10] *Id.* at 21.

[11] *Id.* at 22.

[12] Defs.' Proposed Order, ECF No. 113-1.

3

68 (3d Cir. 1976) (citing 28 U.S.C. § 1292).  A party may appeal interlocutory orders concerning injunctions, receiverships, arbitration, admiralty, and patent infringement. 28 U.S.C. § 1292(a).  All other interlocutory appeals require district court certification.  *See id.* § 1292(b).

A district court may certify an interlocutory appeal under 28 U.S.C. § 1292(b) only if the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *Id.*  Even if the requirements in Section 1292(b) are present, certification is not mandatory.  *Bachowski*, 545 F.2d at 368.  The decision to certify is within the district court's discretion.  *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

Interlocutory review is "exceptional."  *See Graber v. Doe*, 59 F.4th 603, 610 n.14 (3d Cir. 2023) (quoting *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958)).  It is reserved for "difficult questions of law."  *Id.*  It is "sparingly applied."  *Milbert*, 260 F.2d at 433.

The policy goals of Section 1292(b) are to avoid harm to the litigants, prevent protracted litigation where there may be no liability, and correct the disposition of motions that might induce voluntary nonsuit or settlement.  *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc) (explaining the legislative history behind sections 1292(a) and (b)).  Hence, Section 1292(b) aids in "promptly resolving litigation." *Bachowski*, 545 F.2d at 368.

The moving party bears the burden of demonstrating that "exceptional circumstances" justify departing from the final judgment rule.  *L.R. v. Manheim Twp.*

4

*School Dist.*, 540 F. Supp. 2d 603, 608 (E.D. Pa. 2008) (quoting *Douris v. Schweiker,* 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002)).  These conditions are "most likely to be satisfied" when the order "involves a new legal question or is of special consequence."  *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009).

A controlling question of law is one that, if decided erroneously, would lead to reversal on appeal.  *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 581 (E.D. Pa. 2019) (quoting *Katz*, 496 F.2d at 755).  It is also one whose disposition would save time and litigation expenses for the court and the litigants.  *See Katz*, 496 F.2d at 755; *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 599 (E.D. Pa. 2008) (observing that the court and parties would avoid the cost and time of litigating pending motions and trying the case).

Defendants argue that our ruling presents a controlling question of law because if the first-to-file rule applies, the case must be dismissed.[13]  Defendants also contend resolving the controlling question of law before engaging in lengthy litigation would be most efficient.[14]  In response, Relators argue that the basis for our holding was not limited to the issue of whether adding new defendants prevents this action from proceeding.[15]  They explain that our holding was also based on the defendants not being subsidiaries or affiliates of Select, the complaints revealed separate conspiracies between Select and each of the SNFs, and the Government would not have discovered the defendants'

---

[13] Defs.' Mem. in Supp. of Mot. to Certify Order for Interlocutory Appeal and to Stay Case Pending Appeal 9–10, ECF No. 113-2 ["Defs.' Br."].

[14] *See id.* at 10.

[15] *See* Pls.' Opp'n to Defs.' Mot. to Certify Order for Interlocutory Appeal 9–10, ECF No. 116 ["Pls.' Br."].

5

fraudulent acts based only on the allegations in the Complaint in the first action.[16]

Defendants frame the issue for certification as "whether the adding of new defendants in a second *qui tam* action takes the case outside the reach of the first-to-file rule."[17]  The question is not as circumscribed as the defendants contend.  If that was the dispositive issue, the defendants would have a stronger argument that the case presented a controlling question of law about which there is substantial ground for difference of opinion.  That was not the basis of our holding.  We held that this action is not barred because it asserts "a new claim based upon similar but different schemes and a separate injury caused by different defendants."[18]

The defendants correctly point out that there is a circuit split on the question as they frame it.  After analyzing the different holdings and rationales of the circuits, we adopted the reasoning of the Fifth and Tenth Circuits.[19]  We concluded that "adding unrelated defendants in a later-filed FCA action does not necessarily bar that action under the first-to-file rule."[20]  As we noted, the rule is not automatically applied when there is an earlier case filed.  Application of the rule depends on the facts of each case.  Consequently, our inquiry did not end.

We applied the analysis dictated by the Third Circuit in *United States ex rel. St. John LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227 (3d Cir. 1998).  We compared the complaints in the two actions.  The comparison revealed that they

---

[16] *Id.* at 8.

[17] Defs.' Br. 1.

[18] Mem. Op. 18.

[19] *Id.*

[20] *Id.*

6

alleged separate conspiracies with a common defendant and different unrelated defendants.

In sum, our decision did not rest solely on the naming of new defendants. It depended on the factual differences in the two actions. The crucial factor was that the second action alleges a different scheme than the first action did. The result would have been the same had we not addressed the circuit split and followed the approach of the Fifth and Tenth Circuits. Stated simply, there is no controlling question of law.

## Conclusion

Because there is no controlling question of law, we shall deny the motion to certify an interlocutory appeal.